**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Connie R. ZAKRAJSEK, | ) No. CIV-04-0449-PHX-SMM |
| Plaintiff, | ) |
| | ) **MEMORANDUM OF DECISION AND ORDER** |
| v. | ) |
| Susan ARMSTRONG, et al., | ) |
| Defendants. | ) |

Pending before the Court are Maricopa County's Motion for Summary Judgment [Doc. No. 32], Defendants Armstrong, Teenstra, and Campbell's Motion for Summary Judgment [Doc. No. 35], and Plaintiff's Motion to Strike Motion for Summary Judgment Filed By State Defendants and/or To Strike the Affidavits of Susan Armstrong and (The Allegedly) Hon. Colin Campbell. [Doc. No. 39] After considering the arguments raised in the parties' filings, the Court finds that oral argument would be unnecessary to resolve the issues raised by the pending Motions.  Consequently, the Court hereby issues the following Memorandum of Decision and Order.

## I. BACKGROUND

**A. Factual Background**

The following facts, except where noted, are undisputed.

Plaintiff, appearing *pro se*,[1] was a regular patron of the Maricopa County Law Library ("Library") who utilized the Library for "study, maintaining legal knowledge and for participating in litigation as a pro se litigant and to serve the Most High God in various capacities including but not limited to furthering the reform of the American and Arizona legal systems and the spread of the Gospel of Jesus Christ pursuant to the command given her in Matthew 28:19." (Compl. Part II, ¶ 1.)

In December 2003, Defendant Armstrong, Reference and Information Services Coordinator for the Library, provided Plaintiff a copy of the Maricopa County Superior Court's policy on "Solicitation on Court Premises" (the "no solicitation policy" or "policy"). (Compl. Part II, ¶ 21; Ex. D to State Defs.' Statement of Facts, ¶ 5.) Both Defendant Armstrong and Defendant Teenstra, Armstrong's supervisor, warned Plaintiff not to solicit patrons. (Compl. Part II, ¶ 22; State Defs.' Statement of Facts, ¶ 14.) The policy authority is the Presiding Judge of Maricopa County Superior Court, and Defendant Campbell was Presiding Judge of Maricopa County Superior Court at all times described in the Complaint. (Ex. to Compl.; Compl. Part II, ¶ 15; State Defs.' Statement of Facts, ¶ 4.)

On February 17, 2004, Defendant Armstrong contacted Court Security about Plaintiff. (Pl.'s 10/7/05 Aff., ¶ 68; Ex. D to State Defs.' Statement of Facts, ¶ 7; Ex. A. to State Defs.' Statement of Facts.) In an affidavit, Plaintiff alleges that both Defendants Armstrong and Teenstra requested the assistance of Court Security; Defendants proffer an affidavit which maintains Defendant Armstrong contacted Court Security after being advised by Defendant Teenstra to do so. (Pl.'s 10/7/05 Aff., ¶ 68; Ex. D to State Defs.' Statement of Facts, ¶ 7.) Regardless of whether Armstrong contacted Court Security with or without Teenstra, Maricopa County Sheriff's Deputy Garland arrived and asked Plaintiff to leave the Library. (Compl. Part II, ¶ 23; State Defs.' Statement of Facts, ¶ 17; Ex. A to State Defs.' Statement of Facts.) Plaintiff

---

[1]Though Plaintiff appears *pro se*, the Court notes that Plaintiff has been trained as a lawyer. She attended law school at Willamette University and was indeed studying for the Arizona Bar Examination when the events described in the Complaint occurred. (Tr. of 3/4/04 Hr'g on Pl.'s M. for T.R.O., pp. 2-4, 7-8.)

refused and was arrested for trespassing by Sergeant Garland. (Pl.'s 10/7/05 Aff., ¶¶ 37, 40; Ex. A. to State Defs.' Statement of Facts.)  In July 2004, Defendants Armstrong and Teenstra had Court Security inform Plaintiff that she could no longer use the Library's Online Room.  (Pl.'s 10/7/05 Aff., ¶ 69; State Defs.' Statement of Facts, ¶ 18.)  On January 20, 2005, Plaintiff was convicted of one count of criminal trespassing by Judge Carrillo of West Phoenix Justice Court for the February 17, 2004 incident.  (Ex. E to State Defs.' Statement of Facts.)

**B.  Procedural Background**

Plaintiff filed a Complaint in this Court on March 4, 2004, alleging seven causes of action: (1) Declaratory Judgment that the Policy of the County of Maricopa is Unconstitutional and that it was Unconstitutionally as Applied to Plaintiff; (2) Injunctive Relief as to the Policy of Maricopa County Superior Court; (3) Violation of Civil Rights in Excluding Plaintiff from Use of Public Resources of Maricopa County Law Library; (4) Violation of Civil Rights in Treating Plaintiff Differently in Use of Public Resources of Maricopa County Law Library; (5) Conspiracy to Violate Civil Rights of Plaintiff to Use of Public Resources of Maricopa County Law Library; (6) Violation of Constitutional Rights to Free Speech and Free Exercise of Religion; and (7) Defamation of Plaintiff.  [Doc. No. 1]

Defendant Maricopa County filed a Motion for Summary Judgment on August 22, 2005. [Doc. No. 32] On August 30, 2005, the Court issued a warning to the Plaintiff pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1988). [Doc. No. 34]  Plaintiff was provided until September 21, 2005 to respond to Defendant Maricopa County's Motion for Summary Judgment.  Id.  The Rand warnings instructed Plaintiff that "failure of Plaintiff to respond to Defendants' Motion for Summary Judgment, may, in the discretion of the Court, be deemed a consent to the granting of the Motion without further notice."  Id.  In addition, the Court warned that "the Motion shall be deemed ready for decision without oral argument on the day following the date set for filing a reply, unless otherwise ordered by the Court."  Id.

On September 1, 2005, Defendants Armstrong, Teenstra, and Campbell ("State Defendants") filed a Motion for Summary Judgment. [Doc. No. 35] The Court issued another

1    Order on September 7, 2005, which again included the <u>Rand</u> warnings and allowed Plaintiff

2    until October 7, 2005 to respond to the State Defendants' Motion for Summary Judgment. [Doc.

3    No. 37] On October 7, 2005, Plaintiff filed a Motion to Strike the State Defendants' Motion for

4    Summary Judgment [Doc. No. 39], as well as a Motion for Enlargement of Time to File

5    Response to Motion for Summary Judgment Filed by Maricopa County and the State

6    Defendants.[2] [Doc. No. 40] Though the Court-ordered deadline for Plaintiff's Response to the

7    County's Motion for Summary Judgment had passed, the Court granted Plaintiff's Motion for

8    Enlargement of Time and allowed Plaintiff until November 15, 2005 to respond to both Motions

9    for Summary Judgment. [Doc. No. 45] Despite the extension granted by the Court, Plaintiff has

10   not responded to either Motion.[3]  The State Defendants responded to Plaintiff's Motion to Strike

11   their Motion for Summary Judgment on October 24, 2005. [Doc. No. 46] To date, Plaintiff has

12   filed no Reply.  On January 4, 2006, all Defendants filed a Joint Request for Summary

13   Disposition of All Pending Motions for Summary Judgment. [Doc No. 49]

14        The Court's exercise of jurisdiction over Counts I through VI this case is proper under 28

15   U.S.C. § 1331, because the matter in controversy arises under the laws of the United States.

16   The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Count VII, a state law

17   claim, because it shares a "common nucleus of operative fact" with the federal claims.  <u>United</u>

18   <u>Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 725 (1966).  Venue is proper under 28 U.S.C.

19   § 1391(b).

20   //

21   //

22

23   _____

24        [2]Plaintiff also filed an Affidavit of Connie R. Zakrajsek in Support of Response to
     Motions for Summary Judgment of State Defendants and Defendant Maricopa County and in
25   Support of Separate Statement of Facts in Opposition to Motion for Summary Judgment an in
     Support of Plaintiff's Motion for Summary Judgment, in addition to two transcripts of
26   proceedings in Plaintiff's related criminal matter in state court. [Doc. Nos. 41-43]

27        [3]The Court notes that the pendency of Plaintiff's Motion to Strike did not preclude
28   Plaintiff from responding to the Motions for Summary Judgment on their merits.

1

**II.  PLAINTIFF'S MOTION TO STRIKE**

2      Plaintiff moves this Court [Doc. No. 39] to strike either the entirety of the State

3  Defendants' Motion for Summary Judgment [Doc. No. 35] or the affidavits of Judge Colin

4  Campbell and Susan Armstrong which are attached as Exhibits C and D, respectively, to

5  Statement of Facts in Support of State Defendants' Motion for Summary Judgment [Doc. No.

6  36].

7  **A.  Standard of Review**

8      Evidence a party relies upon with respect to a summary judgment motion must have an

9  appropriate foundation and must be supported or opposed by admissible evidence. Fed. R. Civ.

10  P. 56(e).  Inadmissible evidence is subject to a timely objection and may be stricken from the

11  record.  FDIC v. New Hampshire Ins. Co., 953 F.2d 478, 484 (9th Cir. 1991).  Admissibility of

12  evidence is governed by the Federal Rules of Evidence.

13  **B.  Discussion**

14      The Court first notes that Plaintiff has failed to furnish a single basis for her contention

15  that the entire Motion for Summary Judgment should be stricken.  Rather, in her Motion to

16  Strike, Plaintiff focuses solely on the impropriety of the two affidavits.  Because Plaintiff has

17  not put forth any grounds for striking the entire Motion for Summary Judgment, the Court will

18  deny that portion of Plaintiff's Motion to Strike.

19      The Court now turns to Plaintiff's Motion to Strike the affidavits of Defendants Campbell

20  and Armstrong, attached as Exhibits C and D, respectively, to State Defendants' Motion for

21  Summary Judgment.  Plaintiff argues that because the affidavits of Defendants Armstrong and

22  Campbell are  "completely improper, being based in part upon legal conclusions constituting

23  improper and not previously disclosed expert opinion," they should be stricken.  (Pl.'s Mot. to

24  Strike at 2.)  However, Plaintiff provides no support for that argument and the Court finds that

25  neither affidavit constitutes expert opinion.  Plaintiff also contends that the statements made in

26  the affidavits are hearsay and are therefore inadmissible and must be stricken.  (Id. at 4.)  The

27  Court will now address the hearsay argument with respect to each affidavit.

28

### 1. *Defendant Campbell's Affidavit*

Because Plaintiff does not specify which of Campbell's statements constitute inadmissible hearsay, the Court will consider each statement within the affidavit. In his affidavit, Defendant Campbell states that he is a judge, competent to testify about the matters in the affidavit, a defendant in the instant lawsuit, and that he was the Presiding Judge of Maricopa County Superior Court at the time of events described in the Complaint. (Ex. C to State Defs.' Statement of Facts, ¶¶ 1-3.) Lastly, Defendant Campbell provides the purposes of the no solicitation policy. (Id. at ¶ 4.)

Affidavits supporting motions for summary judgment must be based on personal knowledge, must set forth facts that would be admissible in evidence, and must show affirmatively that the person testifying is competent to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(e). Plaintiff does not challenge Campbell's personal knowledge of, or competence to testify about, the events in his Affidavit. Instead, Plaintiff alleges that the affidavit contains inadmissible hearsay.

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion. Fed. R. Evid. 801(a). A "declarant" is a person who makes a statement. Fed. R. Evid. 801(b). Hearsay is not admissible except as provided by the Rules of Evidence or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress. Fed. R. Evid. 802.

The Court finds that Defendant Campbell's statements in his affidavit are not hearsay, because they are assertions of his personal knowledge of the facts and do not reference an out-of-court statement. See Fed. R. Evid. 801(c). Thus, this portion of Plaintiff's Motion to Strike will be denied.

//

//

1

**2.** *Defendant Armstrong's Affidavit*

Although Plaintiff does not specify which of Defendant Armstrong's statements are inadmissible hearsay in her Motion to Strike, Plaintiff identifies four statements that should be stricken in her October 7, 2005 Affidavit.  (Pl.'s 10/7/05 Aff., ¶ 66.)The Court will deny this portion of the Motion to Strike as moot, however, because it takes none of those particular statements into account when considering the Motions for Summary Judgment.

**C. Conclusion**

For the foregoing reasons, the Motion to Strike will be denied.  The Court further finds that oral argument would not be helpful and therefore will not be conducted in this matter.

**III.  MOTIONS FOR SUMMARY JUDGMENT**

**A.  Plaintiff's Failure to Respond to Defendants' Motions for Summary Judgment**

As stated in Section I.B., *supra*, the Court warned Plaintiff in Orders dated August 30, 2005 and September 7, 2005 that "failure of Plaintiff to respond to Defendants' Motion for Summary Judgment, may, in the discretion of the Court, be deemed a consent to the granting of the Motion without further notice." [Doc. Nos. 34, 37] Subsequently, the Court granted Plaintiff's Motion for Enlargement of Time and allowed her until November 15, 2005 to respond to both Motions for Summary Judgment. [Doc. No. 45] To date, Plaintiff has not filed a Response to either Motion.

Rule 7.2(i) of the Rules of Practice of the United States District Court for the District of Arizona ("Local Rules") states that "if the opposing party [to a motion] does not serve and file the required answering memoranda . . . such non-compliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily." Therefore, as the Court warned in its August 30, 2005 and September 7, 2005 Orders, Plaintiff is deemed to have consented to the granting of Defendants' Motions for Summary Judgment. Pursuant to Local Rule 7.2(i), which allows this Court to summarily dispose of a motion in such a situation, the Defendants' Motions for Summary Judgment will be granted.  See Brydges v. Lewis, 18 F.3d 651 (9th Cir. 1994) (per curiam).

1    Alternatively, the Court will next address the pending Motions for Summary Judgment

2    on the merits.

3    **B.  Standard of Review**

4        A court must grant summary judgment if the pleadings and supporting documents, viewed

5    in the light most favorable to the nonmoving party, "show that there is no genuine issue as to

6    any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

7    Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada

8    Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts

9    are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24

10   F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the

11   governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at

12   248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable

13   jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

14       A principal purpose of summary judgment is "to isolate and dispose of factually

15   unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against

16   a party who "fails to make a showing sufficient to establish the existence of an element essential

17   to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322;

18   see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party

19   need not disprove matters on which the opponent has the burden of proof at trial. See Celotex,

20   477 U.S. at 323-24. The party opposing summary judgment "may not rest upon the mere

21   allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that

22   there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co. v.

23   Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044,

24   1049 (9th Cir. 1995).

25   **C.  Discussion: Maricopa County's Motion for Summary Judgment**

26       In the alternative to summarily granting the instant Motion pursuant to Local Rule 7.2(i),

27   the Court addresses the substantive argument of Maricopa County. Maricopa County (the

28

- 8 -

1  "County") argues that it is entitled to summary judgment because the acts or omissions of the

2  Maricopa County Law Library or Defendants Armstrong, Teenstra, and Campbell are not the

3  responsibility of the County.  Rather, the County argues, the above parties are within the

4  purview of the State of Arizona, not Maricopa County.  The Court agrees.

5          A county superior court and its personnel are independent from a county.  See Hernandez

6  v. Maricopa County, 673 P.2d 341, 343 (Ariz. Ct. App. 1983) (citing Mann v. County of

7  Maricopa, 456 P.2d 931 (Ariz. 1969)). The superior court is "part of the judicial department and

8  thus [is] not under the control of the executive branch of the government."  Id.  Therefore, the

9  Maricopa County Superior Court and its personnel are not under Maricopa County's control.

10  Instead, as the Arizona Supreme Court has noted, the superior court is "a *state* office." Collins

11  v. Corbin, 771 P.2d 1380, 1381 (Ariz. 1989) (en banc) (emphasis in original).

12          Therefore, in light of the above, the Court finds that Maricopa County's unopposed

13  Motion for Summary Judgment [Doc. No. 32] must be granted.

14  **D.  Discussion: State Defendants' Motion for Summary Judgment**

15          In the alternative to summarily granting the instant Motion pursuant to Local Rule 7.2(i),

16  the Court addresses the merits of the Motion for Summary Judgment filed by the State

17  Defendants.

18          **1. *Counts I and II***

19          In Counts I and II of her Complaint, Plaintiff seeks a declaration by this Court that the

20  county's no solicitation policy is unconstitutional, as well as injunctive relief. Plaintiff contends

21  that the no solicitation policy unconstitutionally limits free speech and that the policy "was

22  unconstitutionally as applied to Plaintiff." [Compl. Part II, at 6-7.] The Court will consider each

23  argument in turn.

24                    **a.  Whether the no solicitation policy unconstitutionally limits free speech**

25          Plaintiff presents a two-fold challenge to the no solicitation policy.  First, Plaintiff argues

26  that the policy "is not simply a time and place and manner restriction but is intended and

27  designed to chill and thwart the lawful expression of ideas promulgated in the marketplace of

28

ideas." [Id. at ¶ 27.] Second, Plaintiff contends that the no solicitation policy is "vague and ambiguous and not capable of informing any person of what conduct or communication constitutes a violation thereof." [Id. at ¶ 28.] State Defendants respond that the policy is a valid time, place, or manner restriction that is neither vague nor ambiguous. [State Defs.' Mot. for Summ. J. at 6-7.]

The no solicitation policy reads, in pertinent part:

> "Unauthorized solicitation . . . is prohibited in public areas of the Court, and in all Court buildings, facilities and grounds.  This applies to all solicitations for donations, selling or peddling, to the distribution of sales or informational material of every nature, and to offers to provide legal advice or services. . .

> For purposes of this policy, "solicitation" is defined as
> A.  Any activity which might be considered or interpreted as the promotion, sale or transfer of products, services, or memberships, donations, or for the participation in a venture of any kind, including organizational or grievance activities other than those activities designed by employees to promote employee activities or employee welfare.
> B.  The distribution and/or posting of handbills, leaflets, circulars, advertising or other printed material for purposes cited above."

[Ex. to Compl.]

The Court first turns to Plaintiff's argument that the no solicitation policy is an invalid time, place, or manner restriction. "[T]he government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (internal quotation marks and citation omitted).

Under Ward, the first inquiry the Court must make is whether the no solicitation policy is content neutral.  In making such an assessment, the Court must look to whether "the government has adopted a regulation of speech because of disagreement with the message it conveys." Id.  Courts should not "make a searching inquiry of hidden motive; rather, we look at the literal command of the restraint." Menotti v. City of Seattle, 409 F.3d 1113, 1129 (9th Cir. 2005).  Upon review of the no solicitation policy at issue, the Court finds that the purpose

1    of enacting the policy had nothing to do with the content of Plaintiff's message.  Also, the Court

2    notes that the policy applies "equally to persons of all viewpoints."  See id.

3          Next, the Court must determine whether the policy is narrowly tailored to serve a

4    significant government interest.  Ward, 491 U.S. at 791.  Here, Maricopa County Superior Court

5    enacted the no solicitation policy "(1) to promote safety and security within Court buildings and

6    adjacent plazas and parking areas; (2) to promote a judicial atmosphere and prevent a

7    commercial atmosphere; (3) to preserve the independence of the judiciary and Court system;

8    and (4) to preserve the solemnity and tranquility of the Court buildings." [Ex. C. to Defs.'

9    Statement of Facts, ¶ 4.]  The Ninth Circuit has found that the safety of a courthouse and its

10   personnel is a "legitimate interest" of the government.  Wright v. Lane County Comm'rs, 459

11   F.2d 1021, 1023 (9th Cir. 1972) (per curiam).  Thus, this Court finds that a significant

12   government interest exists in the instant case.  Because the "[a] single legitimate government

13   interest may be sufficient to sustain a content neutral regulation," the Court need not address

14   the remainder of the policy's stated purposes.  See Edwards v. City of Santa Barbara, 150 F.3d

15   1213, 1216 (9th Cir. 1998).

16         To be narrowly tailored, the policy "need not be the least restrictive means of furthering

17   [the government's] interests, but the restriction may not burden substantially more speech than

18   necessary to further the interests."  United States v. Baugh, 187 F.3d 1037, 1043 (9th Cir. 1999).

19   The Court finds that the policy is narrowly tailored, because it does not substantially burden

20   substantially more speech than necessary to further its legitimate interest in promoting the safety

21   and security of the court buildings.  Indeed, "there is no evidence to suggest that it is drawn any

22   broader than necessary to do so."  Gerritsen v. City of Los Angeles, 994 F.2d 570, 579 (9th Cir.

23   1993).  Also, without the policy, Superior Court facilities could be become bogged down by

24   solicitation activities, thereby compromising the safety and security of persons in the facilities.

25         The final consideration for the Court in its time, place, or manner analysis is whether the

26   policy "leave[s] open ample alternative channels for communication of the information."  Ward,

27   491 U.S. at 791.  With regard to this inquiry, "the First Amendment requires only that the

28

1   government refrain from denying a 'reasonable opportunity' for communication." <u>Menotti</u>, 409

2   F.3d at 1141.  Here, the policy does not restrict solicitation activities in public places outside

3   Superior Court buildings and beyond adjacent plazas.  Moreover, the policy provides a specific

4   procedural outline for the manner in which patrons may apply for approval to engage in

5   solicitation activities. Because a "reasonable opportunity" for communication exists, the Court

6   finds the policy leaves open ample alternative channels of communication.

7       Therefore, because the no solicitation policy (a) is justified without reference to the

8   content of the regulated speech, (b) is narrowly tailored to serve a significant governmental

9   interest, and (c) leaves open ample alternative channels for communication of the information,

10   the Court finds that the policy is a valid time, place, or manner restriction on speech.

11       In addition to a time, place, or manner challenge to the policy, Plaintiff also argues that

12   it is unconstitutionally vague.  The policy will be deemed unconstitutionally vague if it "fails

13   to provide people of ordinary intelligence a reasonable opportunity to understand what conduct

14   it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement."

15   <u>Hill v. Colorado</u>, 530 U.S. 703, 732 (2000).  "[P]erfect clarity and precise guidance have never

16   been required even of regulations that restrict expressive activity."  <u>Ward</u>, 491 U.S. at 794.

17   Indeed, "[f]acial invalidation is, manifestly, strong medicine that has been employed by the

18   Court sparingly and only as a last resort." <u>Cal. Teachers Ass'n v. State Bd. of Educ.</u>, 271 F.3d

19   1141, 1155 (9th Cir. 2001) (citing <u>Nat'l Endowment for the Arts v. Finley</u>, 524 U.S. 569, 580

20   (1998)).

21       The Court first notes that Plaintiff has not specified which portions of the no solicitation

22   policy are vague.   After reviewing the policy, the Court finds that the policy is not

23   unconstitutionally vague because persons of ordinary intelligence can determine what is

24   prohibited.  Indeed, the terms used in the policy are common terms, and, when read as a whole,

25   the policy provides sufficient context to furnish patrons with a description of what activities are

26

27

28

1   solicitation activities.[4]   Additionally, the Court finds that the policy does not authorize or

2   encourage arbitrary or discriminatory enforcement, as the policy is content and viewpoint

3   neutral.  Thus, Plaintiff's vagueness argument fails.

4                    **b. "As applied" to Plaintiff**

5        Plaintiff also argues that the policy "was unconstitutionally as applied to [her]." [Compl.

6   Part II, at 6-7.] Plaintiff argues that she has been excluded, treated differently, and singled out

7   by Superior Court personnel. [Id. at ¶ 25.] The Court construes this as a selective prosecution

8   claim. See Ferris v. Santa Clara County, 891 F.2d 715, 717 n.2 (9th Cir. 1989).  However, this

9   argument fails because Plaintiff "has set forth no facts to support [her] conclusory allegation"

10  in her Complaint that she has been treated differently or singled out.  See id.

11       Hence, for the reasons above, the Court finds that summary judgment is appropriate as

12  to Counts I and II.

13                **2.  *Counts III through VI***

14       In Counts III, IV, and VI, Plaintiff seeks damages for Violation of Civil Rights in

15  Excluding Plaintiff from Use of Public Resources of Maricopa County Law Library; Violation

16  of Civil Rights in Treating Plaintiff Differently in Use of Public Resources of Maricopa County

17  Law Library; and Violation of Constitutional Rights to Free Speech and Free Exercise of

18  Religion, respectively.  Plaintiff seeks damages in Count V for Conspiracy to Violate Civil

19  Rights of Plaintiff to Use of Public Resources of Maricopa County Law Library.  Thus, Counts

20  III, IV, and VI of Plaintiff's Complaint arise under 42 U.S.C. § 1983 and Count V arises under

21  42 U.S.C. § 1985(3).

22

23

        _____

24       [4]Specifically, the Court refers to a comprehensive reading of the first two sections of the
25  policy, labeled "Policy" and Definitions."  In "Policy," the policy makes clear in common terms
    that "all solicitations for donations, selling or peddling, to the distribution of sales or
26  informational material of every nature, and to offers to provide legal advice or services" are
    prohibited.  The "Policy" section goes on to define a category of activities that are not
27  solicitation.  In the "Definitions" section, the policy delineates what constitutes "solicitation"
28  using common terms.

1    State Defendants argue that summary judgment should be granted as to these counts in

2    light of Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, the United States Supreme Court

3    held that a claim for damages for which success would imply the invalidity of a conviction is

4    not cognizable until the conviction has been "reversed on direct appeal, expunged by executive

5    order, declared invalid by a state tribunal authorized to make such determination, or called into

6    question by a federal court's issuance of a writ of habeas corpus."  Id. at 486-87.  The Heck

7    holding extends to claims brought under 28 U.S.C. § 1985, in addition to those brought under

8    28 U.S.C. § 1983.  McQuillion v. Schwarzenegger, 369 F.3d 1091, 1098 n.4 (9th Cir. 2004).

9    Plaintiff was convicted of trespassing [Ex. E to Defs.' Statement of Facts] and no evidence

10   of a reversal, expungement, declaration of invalidity by a state court, or an issuance of a writ

11   of habeas corpus is present in the Record.  Therefore, this Court will grant summary judgment

12   on Counts III through VI on the basis of the Heck doctrine, because success on the merits of

13   Plaintiff's claims would imply the invalidity of her conviction for trespassing.

14   **3.  *Count VII***

15   Last, the Court considers Plaintiff's state law claim for defamation.  State Defendants

16   argue in their Motion for Summary Judgment that Plaintiff's state law claim is barred because

17   she failed to serve a notice of claim on Defendants.  The Court agrees.

18   A.R.S. § 12-821.01 requires that "any action against a public entity or public employee

19   must be preceded by notice of the claim to each entity and each employee named in the

20   subsequent lawsuit."  Johnson v. Superior Court,763 P.2d 1382, 1385 (Ariz. Ct. App. 1988)

21   (stating what A.R.S. § 12-821(A), the predecessor to A.R.S. § 12-821.01 mandates).  The

22   purposes for this requirement are "to provide notice to the state and an opportunity to investigate

23   and assess its liability, to permit the possibility of settlement prior to litigation, and to assist in

24   fiscal planning or budgeting."  Id. at 1383.  If a litigant fails to provide timely notice in

25   accordance with A.R.S. § 12-821.01, his claim is barred.  See A.R.S. § 12-821.01.

26

27

28

1   The Court finds that Plaintiff filed to provide any notice of her claim prior to filing the

2   instant lawsuit.  Accordingly, Plaintiff's state law defamation claim is barred and Defendants

3   are entitled to summary judgment as to that count.

4   **E.  Conclusion**

5   Therefore, the Court summarily grants the pending Motions for Summary Judgment under

6   Rule 7.2(i) of the Rules of Practice of the United States District Court for the District of

7   Arizona.  In the alternative, the Court grants Maricopa County's Motion for Summary Judgment

8   [Doc. No. 32] on the merits, and also grants State Defendants' Motion for Summary Judgment

9   [Doc. No. 35], because the Court finds that no reasonable jury could return a verdict for Plaintiff

10   on the evidence before the Court.[5]

11   ### IV. ATTORNEYS' FEES AND COSTS

12   Both Maricopa County and State Defendants have requested that the Court award

13   attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b). [Doc. Nos. 11, 12] State Defendants

14   have also requested attorneys' fees and costs under A.R.S. § 12-349.  The Court will first

15   address attorneys' fees under 42 U.S.C. § 1988.

16   Section 1988 provides for the discretionary award of attorneys' fees in any action to

17   enforce specific federal statutes, including 42 U.S.C. §§ 1983 and 1985.  Thus, because this case

18   is grounded in civil rights claims under § 1983, Defendants' requests for fees in accordance with

19   § 1988 are proper.

20   A prevailing defendant is entitled to attorneys fees under 42 U.S.C. § 1988 only when the

21   plaintiff's claims are "groundless, without foundation, frivolous, or unreasonable." McCarthy

22   v. Mayo, 827 F.2d 1310, 1318 (9th Cir. 1987).  A case may be deemed frivolous only when the

23   "result is obvious or the . . . arguments of error are wholly without merit." McConnell v.

24   Critchlow, 661 F.2d 116, 118 (9th Cir. 1981) (citation omitted).  The Court finds that the result

25   of Plaintiff's civil rights claims were obvious from the outset of the litigation, because the claims

26

27        [5]The Court recognizes that State Defendants asserted additional arguments, such as
qualified immunity, in their Motion for Summary Judgment.  The Court, however, need not

28   address those arguments as the Motion has been granted for the reasons set forth above.

1    were precluded by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).  The Court notes that it makes its

2    finding despite Plaintiff's *pro se* status, given that Plaintiff attended law school and was actually

3    studying for the Arizona Bar Examination when the events described in the Complaint took

4    place.  (Tr. of 3/4/04 Hr'g on Pl.'s M. for T.R.O., pp. 2-4, 7-8.); <u>cf.</u> <u>Miller v. Los Angeles</u>

5    <u>County Bd. of Educ.</u>, 827 F.2d 617, 620 (9th Cir. 1987) (finding that a district court's award of

6    attorney's fees against *pro se* litigant was "based on legal error" because the district court did

7    not take plaintiff's *pro se* status into account during award determination).

8        Thus, the Court finds that Plaintiff's civil rights claims were frivolous and Defendants are

9    entitled to attorneys' fees.  Furthermore, the Court finds that Defendants' entitlement to

10   attorneys' fees extends to all claims contained in the Complaint, not just those claims brought

11   pursuant to 42 U.S.C. §§ 1983 and 1985.  In so finding, the Court first notes that 42 U.S.C. §

12   1988 does not preclude an award for the entire case.  Additionally, the Ninth Circuit has

13   affirmed a district court's award of attorney's fees to an entire case where plaintiff brought both

14   fee-eligible and non-fee-eligible claims which would ordinarily would be tried in one

15   proceeding. <u>Southeast Legal Defense Group v. Adams</u>, 657 F.2d 1118, 1123 (9th Cir. 1981).

16       Therefore, the Court will award all Defendants attorneys' fees and costs pursuant to 42

17   U.S.C. § 1988.  Finally, because the Court has awarded attorneys' fees and costs based on

18   federal grounds, the Court declines State Defendants' invitation to award them fees under A.R.S.

19   § 12-349.  Defendants may file the appropriate claim pursuant to Rule 54.2 of the Rules of

20   Practice of the United States District Court for the District of Arizona, effective December 1,

21   2005.

## V.  CONCLUSION

23       For the reasons set forth above,

24       **IT IS ORDERED** that Maricopa County's Motion for Summary Judgment [Doc. No. 32]

25   and Defendants Armstrong, Teenstra, and Campbell's Motion for Summary Judgment [Doc. No.

26   35] are GRANTED.

1    **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Motion for Summary

2 Judgment Filed By State Defendants and/or To Strike the Affidavits of Susan Armstrong and

3 (The Allegedly) Hon. Colin Campbell [Doc. No. 39] is DENIED.

4    **IT IS FURTHER ORDERED** that Plaintiff's request for oral argument is DENIED as

5 unnecessary.

6    **IT IS FURTHER ORDERED** that Defendants' requests for attorneys' fees and costs

7 are GRANTED pursuant to 42 U.S.C. § 1988.

8    **IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment

9 accordingly and terminate this action.

10

11    DATED this 13th day of January, 2006.

12

13

14    _____
                          Stephen M. McNamee
15                   Chief United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28